NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BYRON K. JONES, JR., : | |
| : | Civil Action No. 13-0132 (RBK) |
| Petitioner, : | |
| : | |
| v. : | OPINION |
| : | |
| ROBERT CHETIRKIN, *et al.*, : | |
| : | |
| Respondents. : | |

**KUGLER, DISTRICT JUDGE:**

Before this Court is the Petition for a writ of habeas corpus of Petitioner Byron K. Jones, Jr. ("Petitioner"), brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the following reasons, the Court denies the Petition, and declines to issue a certificate of appealability.

I. **BACKGROUND**

The Superior Court of New Jersey, Appellate Division, provided the following summary of the factual background of Petitioner's case:

> A Gloucester County grand jury indicted defendant on six third-degree charges: (counts one and four) possession of cocaine, N.J.S.A. 2C:35–10a(1); (counts two and five) possession of cocaine with intent to distribute, N.J.S.A. 2C:35–5b(3); and (counts three and six) distribution of cocaine, N.J.S.A. 2C:35–5b(3). Counts one through three arose from an undercover purchase of cocaine from defendant on November 3, 2006. Counts four through six arose from the purchase of cocaine from defendant by the same undercover detective at the same location six days later, November 9, 2006.
>
> Defendant expressly waived in open court his constitutional right to be tried by a jury. His bench trial was held before Judge Walter Marshall Jr. in April 2010. The State presented the testimony of

four law enforcement witnesses—the undercover detective, a second detective in charge of the investigation, an evidence custodian, and an expert from the State Police laboratory to identify the items purchased as cocaine. The defense did not present any witnesses.

The undercover detective testified that on November 3, 2006, he and a confidential informant went to a fast food restaurant, where the confidential informant introduced him to defendant. The detective then purchased one-quarter ounce of cocaine from defendant, receiving the drugs and paying $250 to defendant under a table. The detective also testified that he obtained defendant's telephone number at that time for future transactions. Following the November 3 purchase, the detective in charge of the investigation showed the undercover detective a single photograph, which depicted defendant, and the undercover detective identified the photograph as the person from whom he had just purchased the cocaine.

The undercover detective testified that he contacted defendant directly on November 9, 2006, at the telephone number he had received, and he asked for another quarter ounce of cocaine. The detective then met defendant alone at the same fast food restaurant and purchased the quarter ounce, again for $250. No confidential informant was involved or present for the second purchase. After the transaction, the undercover detective again identified the same photograph as the person from whom he had purchased the cocaine. The detective testified that he wore a concealed microphone during the two transactions so that other detectives could monitor the events from a location nearby to ensure his safety and the safety of the public. He testified that the November 3 transaction was not recorded because the detectives did not want to jeopardize the informant's safety by recording his voice.

During cross-examination of the undercover detective, defense counsel discovered a DVD recording in the detective's file that was marked "not for discovery" and had not been turned over to the defense before the trial. The assistant prosecutor who was trying the case was not aware of the DVD recording. The court ruled that the defense was entitled to discovery of the DVD, which was a recording of the November 3 transaction. The recording revealed that two confidential informants had actually been present during the first transaction and one of them had initially received the cocaine before it was returned to defendant and then given to the undercover detective. The court ordered that a transcript of the recording be promptly prepared, and the defense was given an

opportunity to review the recording and transcript and subsequently to cross-examine the undercover detective about the discrepancies in his testimony and the contents of the recording.

Upon completion of all testimony and the arguments of counsel, Judge Marshall dismissed counts one through three of the indictment pertaining to the November 3 transaction. The judge found that the State had violated defendant's due process rights by failing to disclose the recording before the trial. Reviewing the evidence pertaining to counts four through six, the judge concluded beyond a reasonable doubt that defendant had engaged in the November 9 transaction and therefore was guilty of the charges brought in those counts.

At the sentencing hearing on September 20, 2010, the judge referenced defendant's three prior convictions on drug distribution charges and sentenced him to an extended term of seven years imprisonment with three years of parole ineligibility, consecutive to a sentence defendant was then serving for conviction on another drug offense.

*State v. Jones*, Indictment No. A-4600-10T1, 2012 WL 2505714, at *1–2 (N.J. Super. Ct. App. Div. July 2, 2012).

Petitioner appealed his conviction and sentence. The Appellate Division affirmed the conviction on July 2, 2012. *Id*. The Supreme Court of New Jersey denied certification on September 25, 2012.[1] *State v. Jones*, 52 A.3d 177 (N.J. 2012). In January 2013, Petitioner filed a habeas petition with this Court. (ECF No. 1.) Construing the Petition liberally, Petitioner appears to raise six grounds for habeas relief:

1. The defendant's right to a jury trial as guaranteed by the Sixth Amendment to the United States Constitution and Art. I, Par. 9 of the New Jersey Constitution was violated when the trial court relied on an erroneous legal standard to determine whether to grant a *pro se* motion for a waiver of a jury trial.

2. The defendant's right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Art. I, Par. 1 of the New Jersey Constitution was violated by the admission of unduly suggestive identification evidence.

---

[1] Petitioner does not appear to have filed a subsequent petition for post-conviction relief.

3. The defendant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Art. I, Par. 1 of the New Jersey Constitution was violated by the suppression of exculpatory evidence.

4. The sentence is excessive.

   A. The defendant was improperly sentenced to a mandatory extended term.

5. [Ineffective Assistance of Counsel.]

6. [Insufficient Evidence.]

(ECF No. 1.)

Respondents filed an initial answer in which they argued that the petition was untimely. (ECF No. 10.) Per the Court's Order of March 26, 2018 (ECF No. 11), Respondents filed a Supplemental Answer in which they argue that Petitioner's claims are meritless, and Ground Five is unexhausted. (ECF No. 12.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Price v. Vincent*, 538 U.S. 634, 641 (2003); *Harrington v. Richter*, 562 U.S. 86, 98 (2011). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## III. DISCUSSION

### A. Ground One: Waiver of Jury Trial

In Ground One, Petitioner argues that the trial court erred in granting his *pro se* motion to waive his right to a jury trial. (ECF No. 1 at 2.) The Superior Court of New Jersey, Appellate Division, rejected the claim as follows:

> Point I, pertaining to waiver of trial by jury, was . . . not raised before the trial court. In fact, it is directly contrary to defendant's application at the time of trial to dispense with a jury.
>
> As background for the issue . . . we recount the following information gathered from the sentencing hearing and the presentence investigation report. After the undercover transactions in this case, defendant was arrested and charged with drug offenses based on a search warrant executed on February 5, 2007. He was charged in a separate indictment with second-degree possession of a controlled dangerous substance with intent to distribute and related offenses. He stood trial before a jury and Judge Marshall on the separate indictment and was found guilty. The judge sentenced him on January 22, 2010, to thirteen years imprisonment with six-and-a-half years of parole ineligibility.
>
> When he appeared before the judge again on April 12, 2010, on the charges arising from the November 3 and 9, 2006 undercover purchases, defendant requested that the court conduct the trial without a jury. Defense counsel stated he had advised defendant against proceeding without a jury, but defendant still desired to waive a jury for the second trial. Judge Marshall spoke to defendant directly and advised him about his Sixth Amendment right to trial by jury. Defendant indicated that he understood his rights but he believed he would receive a fair trial without a jury. Before proceeding with the bench trial, the judge established through questioning defendant that he was voluntarily and knowingly waiving trial by jury.
>
> On appeal, defendant argues that the court's acceptance of his waiver did not satisfy the holding of *State v. Dunne*, 124 N.J. 303 (1991), with respect to waiver of a jury trial. In *Dunne*, the Supreme Court stated:
>
>> [W]hen reviewing a request to waive a jury trial, a court should:

(1) determine whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel;

(2) determine whether the waiver is tendered in good faith or as a stratagem to procure an otherwise impermissible advantage; and

(3) determine, with an accompanying statement of reasons, whether, considering all relevant factors . . . it should grant or deny the defendant's request in the circumstances of the case.

[*Id*. at 317.]

Defendant argues that the judge in this case did not consider whether defendant had a good faith basis for waiving trial by jury and did not state explicitly the reasons for granting the waiver.

Defendant's argument is without merit. *Dunne* involved the trial court's denial of a defendant's request to waive a jury in a murder case. *Id.* at 307. The Supreme Court first held that the defendant did not have a constitutional right to a bench trial instead of a jury trial. *Id.* at 312, 316. It ultimately held that the trial court had not abused its discretion in denying the defendant's waiver of a jury trial. *Id.* at 306.

In *State v. Jackson*, 404 N.J. Super. 483, 489–90 (App. Div.), *certif. denied*, 199 N.J. 129 (2009), we considered *Dunne* in the context of facts and arguments essentially identical to those in this case. In *Jackson*, as here, the trial court granted the defendant's application to waive a jury trial after questioning him closely to ensure that his waiver was knowing and voluntary. *Id.* at 486–88. After the defendant was convicted at a bench trial, he challenged on appeal the judge's granting of his request. *Id.* at 485. In rejecting the defendant's argument on appeal, we analyzed the reasoning for *Dunne's* strict standards as quoted previously, *id.* 488–91, and we held: "that a defendant who has persuaded the trial court to grant his motion to waive the right to a jury trial may challenge that decision only if he can show that his waiver was not voluntary and knowing[,]" *id.* at 490. We stated that the other requirements established in *Dunne* applied where the court denied defendant's application for the benefit of the public. *Ibid.*

> Here, the trial judge made an explicit finding that defendant waived his right to trial by jury "knowingly, intelligently, and voluntarily." The court stated that defendant's reason for choosing to proceed without a jury was that "he just feels more secure with the court handling [the trial] rather than a jury." There was no plain error in the court accepting defendant's waiver of a jury trial and conducting a bench trial.

*Jones*, 2012 WL 2505714, at *2–4.

The right of a criminal defendant to be tried by a jury of his peers is a fundamental constitutional guarantee. *Duncan v. Louisiana*, 391 U.S. 145 (1968). This right can be waived, however, by a defendant's "express and intelligent consent", and the agreement of both the government and the court. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 277–78 (1949). "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Id.* at 278.

The state court decision was neither contrary to, nor an unreasonable application of Supreme Court precedent. Petitioner has failed to establish any facts that would indicate he did not know or understand the right he was giving up. The trial transcript establishes that the judge conducted a colloquy and Petitioner indicated in no uncertain terms that he did not want to be tried by a jury. (ECF No. 12-1 at 83–86.) The judge then asked various follow-up questions to ascertain if Petitioner understood the constitutional right he was giving up. (*Id.*) Petitioner affirmatively indicated that he understood the consequences of his decision. (*Id.*) Petitioner's attorney also stated that he cautioned Petitioner at length about his decision, but that Petitioner was adamant about being tried before a judge. (*Id.*) Because the record reveals that Petitioner expressly and intelligently consented to the waiver, the state court decision on this matter was not unreasonable. As such, this claim for habeas relief is denied.

8

**B. Ground Two: Unduly Suggestive Evidence**

In Ground Two, Petitioner claims that his constitutional rights were violated by the admission of unduly suggestive identification evidence. (ECF No. 1 at 2.) While Petitioner provides no facts to support his claim here, in his brief on direct appeal below, he explained that the undercover detective, Detective Ingram, failed to follow the Attorney General's guidelines on proper photograph identification procedures. (ECF No. 10-1 at 20.) Petitioner explained that Detective "Ingram was handed one photograph depicting the defendant. Ingram could select the defendant or he could identify nobody." (*Id.*)

The Superior Court of New Jersey, Appellate Division, denied this claim as follows:

> Next, defendant argues that he was prejudiced by testimony from the undercover detective identifying him as the person from whom he purchased the cocaine on November 3 and 9, 2006. He argues that the showing of a single photograph to the undercover detective after each transaction was an unduly suggestive identification procedure contrary to guidelines promulgated by the Attorney General and also contrary to the [New Jersey] Supreme Court's recent detailed discussion of appropriate identification procedures in *State v. Henderson*, 208 N.J. 208, 288–93 (2011).
>
> The plain error standard of review applies to this argument because defense counsel raised no objection to the undercover detective's identification testimony at trial. *R.* 2:10–2. Under the plain error standard, a conviction will be reversed only if the error was "clearly capable of producing an unjust result," *ibid.*, that is, if it was "'sufficient to raise a reasonable doubt as to whether the error led [the factfinder] to a result it otherwise might not have reached[.]'" *State v. Taffaro*, 195 N.J. 442, 454 (2008) (quoting *State v. Macon*, 57 N.J. 325, 336 (1971)). Defendant must prove that a plain error was clear or obvious and that it affected his substantial rights. *State v. Chew*, 150 N.J. 30, 82 (1997), *cert. denied*, 528 U.S. 1052, 120 S. Ct. 593, 145 L. Ed. 2d 493 (1999), *overruled in part on other grounds by State v. Boretsky*, 186 N.J. 271, 284 (2006).
>
> Here, identification of defendant was not dependent entirely on the undercover detective's testimony. The identification was corroborated by descriptions of the two different cars and their distinctive wheels that the seller of the cocaine drove to the fast food

> restaurant on November 3 and 9, 2006. The detective in charge of the investigation had also made observations of the cars to identify defendant as the person who arrived and met with the undercover detective at the restaurant. The second detective was previously familiar with defendant and had, in fact, planned the undercover investigation to target defendant specifically. Furthermore, the November 9 transaction was arranged through direct contact of the undercover detective with defendant using the phone number provided to him.
>
> Besides this corroborative evidence, the identification of the single photograph by the undercover detective is reliable because the detective, who was the same race as defendant, met him two times within a matter of days, interacted closely with defendant for several minutes, saw the photograph immediately after each transaction, and was able to identify defendant in the courtroom.
>
> The fact that identification of defendant by the undercover detective was not a contested issue at trial indicates its relative insignificance in the nature of the proofs at trial. We conclude there was no plain error in the alleged deviation from proper photo identification procedures.

*Jones*, 2012 WL 2505714, at *4–5.

"An identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)). "Unnecessary suggestiveness contains two component parts: that concerning the suggestiveness of the identification and that concerning whether there was some good reason for the failure to resort to less suggestive procedures." *Brownlee*, 454 F.3d at 137 (citation and internal quotation marks omitted). "[A] suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Factors to be considered in that analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness

at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

While not citing directly to Supreme Court case law, the Appellate Division decision rejecting this claim was not unreasonable. Here, the photograph identification procedure possessed sufficient aspects of "reliability." *Manson, supra*, 432 U.S. at 106. The record demonstrates that Detective Ingram observed Petitioner throughout the drug transaction on November 3, and very shortly after gave a description of Petitioner and identified him in a photograph. (ECF Nos. 12-2 at 24; 12-3 at 47.) Further, Detective Ingram testified that he was certain after looking at the photograph that it depicted the individual who had just sold him cocaine. (ECF No. 12-2 at 24–32.) During the November 9 transaction, Detective Ingram had a second opportunity to view Petitioner. He was again certain that it was the same individual depicted in the photograph. In addition, a second detective, Detective Ferris, testified that Detective Ingram identified Petitioner in the photograph within minutes of the drug transaction, and Detective Ferris corroborated much of Detective Ingram's testimony. (ECF No. 12-3 at 47.) Based on these facts, as well as the factors laid out in *Biggers*, 409 U.S. at 199, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of Supreme Court precedent. As such, this claim for habeas relief is denied.

### C. Ground Three: *Brady* Violation

In Ground Three, Petitioner argues that his constitutional rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner raised this claim in his appeal before the state court, explaining that the State's failure to produce a tape recording of the November 3 transaction violated his rights under *Brady*. (ECF No. 10-1 at 25–28.)

The Appellate Division rejected this claim as follows:

> Defendant argues that the State's failure to produce in discovery the DVD recording of the November 3 transaction was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that should have been sanctioned by dismissal of the entire indictment. Although the trial court initially denied defendant's motion to dismiss when the discovery violation was revealed, it ultimately granted that sanction as to the November 3 transaction and dismissed counts one through three of the indictment. The evidence that was improperly withheld by the detectives was not exculpatory but would have provided relevant information to defendant and his attorney in preparation for challenging the accuracy of the undercover detective's testimony as to the first transaction. The recording had nothing to do with the November 9 transaction. We find no abuse of discretion in the trial court's determination of an appropriate sanction for the State's *Brady* violation.

*Jones*, 2012 WL 2505714, at *5.

Under *Brady*, the State bears an "affirmative duty to disclose [material] evidence favorable to a defendant." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady*, 373 U.S. at 87.) "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In *Strickler v. Greene*, the Supreme Court clarified that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281–82 (1999).

Here, the record establishes that after it became known that Detective Ingram had in his file a DVD of the November 3 transaction, with the words "not for discovery" on it, defense counsel was granted permission to listen to the DVD. In that recording, it became clear that aspects of Detective Ingram's testimony related to the November 3 transaction were inaccurate. The recording revealed that two confidential informants were present during the drug transaction, not

one, and that the cocaine was first handed to a confidential informant, and was only then given to Detective Ingram. (*See* ECF No. 12-3 at 4.) The defense then moved for dismissal of the entire indictment, related to both the November 3 and November 9 transactions. (*Id.* at 5.) The trial judge ultimately dismissed counts one through three of the indictment, related to the November 3 transaction, finding the State had violated the Petitioner's due process rights by failing to disclose the evidence. (ECF No. 12-4 at 32). However, with respect to the November 9 transaction, the judge concluded that the State's due process violation did not carry over to that transaction. (*Id.* at 34.)

The state court's decision rejecting this claim was neither contrary to, nor an unreasonable application of Supreme Court precedent. The record makes clear that the judge did in fact find that the State had violated Petitioner's due process rights and dismissed counts one through three of the indictment. The record also reflects that the audio recording only pertained to the November 3 transaction and that the discrepancies in Detective Ingram's testimony played no role in his testimony covering the November 9 transaction. Even if the recording would have been helpful to discredit Detective Ingram's testimony overall, there was additional testimony from Detective Ferris corroborating much of Detective Ingram's testimony. Thus, Petitioner has failed to demonstrate that he was prejudiced within the meaning of *Brady*. *See Bagley*, 527 U.S. at 281–82. Furthermore, because the audio recording was only of the November 3 transaction, and the state court dismissed those counts of the indictment, the Court is satisfied that any *Brady* violation was appropriately dealt with by the state court. Because the rejection of this claim by the Appellate Division was not unreasonable, the Court denies relief on this claim.

### D. Ground Four: Excessive Sentence

Petitioner next argues that his sentence is excessive. (ECF No. 1 at 2.) The Appellate Division rejected this claim, stating:

> With respect to the seven-year sentence on the merged third-degree charges, defendant argues that the trial court erred in granting the State's motion for an extended term and in weighing aggravating and mitigating factors.
>
> "[T]rial judges are given wide discretion so long as the sentence imposed is within the statutory framework." *State v. Dalziel*, 182 N.J. 494, 500 (2005). Our review of a sentencing decision can involve three types of issues: (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience." *State v. Roth*, 95 N.J. 334, 364–65 (1984); *accord State v. Carey*, 168 N.J. 413, 430 (2001); *State v. Roach*, 146 N.J. 208, 230, *cert. denied*, 519 U.S. 1021, 117 S. Ct. 540, 136 L. Ed. 2d 424 (1996). We do not substitute our judgment regarding an appropriate sentence for that of the trial court. *State v. Natale*, 184 N.J. 458, 488–89 (2005); *Roth, supra*, 95 N.J. at 365.
>
> Here, defendant had three prior convictions for drug distribution offenses. It appears that the State sought an extended term under either the persistent offender statute, N.J.S.A. 2C:44–3a, or the repeat drug offender statute, N.J.S.A. 2C:43–6f. The trial court concluded that defendant's record of prior drug convictions required application of a mandatory extended term.
>
> If the sentencing court determines defendant has a predicate prior drug conviction as provided by N.J.S.A. 2C:43–6f, the statute "requires [it] to impose an enhanced-range sentence when the prosecutor applies for such relief." *State v. Thomas*, 188 N.J. 137, 149 (2006). Then "the court . . . [determines a] defendant's sentence within the extended-term range based on aggravating and mitigating factors. . . ." *Id.* at 154.
>
> The trial court found three aggravating factors applicable: aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44–1a(3); aggravating factor six, "[t]he extent of the defendant's prior criminal record and the

> seriousness of the offenses of which he has been convicted," N.J.S.A. 2C:44–1a(6); and aggravating factor nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44–1a(9). The court found no mitigating factors applicable.
>
> Given the highly deferential standard of review from the court's finding of aggravating and mitigating factors, *State v. Bieniek*, 200 N.J. 601, 608–09 (2010), and also from the trial court's discretionary decision on the length of the sentence imposed within an appropriate sentencing range, *Carey, supra*, 168 N.J. at 430; *Roth, supra*, 95 N.J. at 364–66, we find no error or abuse of discretion in defendant's sentence of seven years imprisonment with three years of parole ineligibility.

*Jones*, 2012 WL 2505714, at *5–6.

The Court first notes that State sentences are generally matters of state law. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment") (citations omitted); *see also Reid v. Ricci*, No. 07-3815, 2008 WL 2984207, at *12 (D.N.J. July 31, 2008) ("absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process . . . the legality of [a petitioner's] state court sentence is a question of state law") (citations omitted).

Here, the facts do not indicate that the sentence imposed was cruel and unusual, or arbitrary in a manner that would violate the United States Constitution. The record reveals that Petitioner was sentenced to seven years imprisonment on count six, for the knowing or purposeful distribution of cocaine, a third degree offense. *See* N.J. Stat. Ann. § 2C:35–5b(3); *see also* (Judgment of Conviction, ECF No. 12-1 at 9.) Counts four and five were merged with count six. The State moved for an extended-term sentence, based upon Petitioner's adult criminal record of

various drug related offenses. (ECF No. 12-4 at 41–43.) During the sentencing hearing, the judge found that Petitioner was eligible for an extended-term sentence of five to ten years under N.J. Stat. Ann. § 2C:43-7(a)(4) as a persistent offender and repeat drug offender. *See* N.J. Stat. Ann. § 2C:44-3; *see also* N.J. Stat. Ann. § 2C:43-6f.

Thus, the sentence did not go beyond the statutory maximum; Petitioner was eligible for an extended term of five to ten years, and only received a sentence of seven years. In fact, the judge articulated that Petitioner would not receive a maximum sentence, stating: "I don't find that anything near a maximum term is appropriate . . ." (ECF No. 12-4 at 44.) While the judge did also assess various aggravating factors, such as the risk Petitioner would commit another offense, the extent of his prior criminal record, and the need to deter him and others from violating the law, *see* N.J. Stat. Ann. § 2C:44-1, the sentence was still within the prescribed statutory maximum.[2] Therefore, given that Petitioner was clearly eligible for an extended-term sentence under New Jersey law, and given that the sentence fell within the statutory range under New Jersey law, the Court does not find that the state sentence imposed was unreasonable. As such, this claim for habeas relief is denied.

**E. Ground Five: Ineffective Assistance of Counsel**

In Ground Five, Petitioner alleges that his attorney was ineffective in failing to properly argue that Detective Ingram's testimony was inconsistent with the audio recording. (ECF No. 1

---

[2] While Petitioner does not specifically raise a claim under *Blakely v. Washington*, 542 U.S. 296 (2004), to the extent he is attempting to do so, the Court finds this claim meritless. In *Blakely*, the Supreme Court held that a judge-imposed sentence in the context of a jury trial that increases the penalty beyond the statutory maximum must be based upon facts found by the jury beyond a reasonable doubt. 542 U.S. at 303–04. Here, because the sentence is within the prescribed statutory range, *Blakely* is not applicable.

at 8.) While this claim is unexhausted, the Court will nevertheless deny the claim on the merits. *See Horn*, 504 F.3d at 427 (permitting courts to deny unexhausted claims on the merits).

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id*. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id.* at 1083.

Here, Petitioner has failed to demonstrate that his counsel was deficient under *Strickland*. In fact, the trial transcript reveals that defense counsel argued, repeatedly, that the entire indictment should have been dismissed as a result of the State's *Brady* violation. Counsel further argued that the audio recording established that Detective Ingram's entire testimony was not credible. Defense counsel conducted extensive cross-examination of Detective Ingram eliciting many inconsistent

statements. Counsel was so effective that the trail court dismissed three counts of the indictment. Because Petitioner fails to demonstrate that his counsel was deficient under *Strickland*, this claim for habeas relief is denied.

**F. Ground Six: Insufficient Evidence**

In his final claim for habeas relief, Petitioner argues that the State failed to produce "any supporting evidence . . . on this undercover officers' [Detective Ingram] investigation technique" and that the "technique [Detective Ingram] said he used wasn't consistent with the audio recording verbal conversations." (ECF No. 1 at 8.)

While Petitioner does not say so explicitly, he appears to raise a claim related to the sufficiency of the evidence against him. Once again, while this claim is unexhausted, the Court will deny it on the merits.

When a petitioner presents a claim challenging the sufficiency of the evidence against him, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction for insufficiency of the evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

Here, given the testimony from Detective Ingram and Detective Ferris detailing the November 9 transaction, as well as the subsequent photograph identification of Petitioner, it is clear that a rational fact-finder could have found Petitioner guilty beyond a reasonable doubt. Thus, Petitioner's contention that there was insufficient evidence of his guilt is without merit. The testimony of Detective Ingram was extremely detailed: he described his phone conversation with Petitioner prior to the sale, he detailed the circumstances of the sale in the restaurant, he described how the drugs and money were exchanged, he gave a detailed description of the unique vehicle Petitioner arrived and departed in, and he described his identification of Petitioner in a photograph given to him by Detective Ferris. Detective Ferris, who was present outside the restaurant listening to a live audio recording, corroborated much of that testimony. Detective Ferris described Petitioner's unique vehicle, his observation of Petitioner entering and leaving the restaurant, and the discussion he heard between Detective Ingram and Petitioner related to the price of the transaction. Because the evidence in this matter was clearly sufficient, the Court denies relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of

19

the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## V. CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.


Dated: <u>August 13, 2018</u>___                    _s/Robert B. Kugler_____
                                                   Robert B. Kugler
                                                   United States District Judge